# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TRACY KEITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 11-2281-KHV** |
| **ROGER WERHOLTZ,** ) | |
| **RICHARD KOERNER,** ) | |
| **WILLIAM CUMMINGS,** ) | |
| **MAJOR JOSEPH P. ESSMAN,** ) | |
| **CAPTAIN MARK ROBERTSON, and** ) | |
| **ANANSTACIO GALLARDO,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Under 42 U.S.C. §§ 1983 and 1988, Tracy Keith brings suit against Topeka Correctional Facility ("TCF") employees Roger Werholtz, Richard Koerner, William Cummings, Joseph P. Essman, Mark Robertson and Ananstacio Gallardo. Plaintiff brings individual capacity claims against all defendants, alleging violation of the Eighth Amendment. Specifically, plaintiff alleges that on October 2, 2007, while she was incarcerated at TCF, Gallardo forced her to have sex. She alleges that prior to that date, the other defendants created and allowed a custom/policy/practice/culture of sexual misconduct at TCF which put plaintiff and other inmates at substantial risk of harm, failed to take reasonable measures to abate the culture of sexual misconduct and were deliberately indifferent to this substantial risk of harm.

This matter is before the Court on the Motion To Dismiss Plaintiff's Complaint (Doc. #7) which defendants Werholtz, Koerner, Cummings, Essman and Robertson filed July 15, 2011.

1

Under Rule 12(b)(6), Fed. R. Civ. P., the moving defendants assert qualified immunity and claim that plaintiff brings her claims outside the statute of limitations. For reasons stated below, the Court sustains defendants' motion in part.

<b>Legal Standards</b>

### A.   Motion To Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing her complaint with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when she pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 129 S. Ct. at 1949. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 129 S. Ct. at 1949.

Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief.  Id. at 1950.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

### B. Statute Of Limitations

While ordinarily the statute of limitations is an affirmative defense, the issue may be resolved on a Rule 12(b)(6) motion to dismiss where the application of the limitations period is apparent on the face of the complaint.  Aldrich v. McCulloch Props. Inc., 627 F.2d 1036, 1041 (10th Cir. 1980).  Because no federal statute of limitations exists for Section 1983 actions, courts look to analogous state laws and the applicable state statutes of limitation to determine the appropriate time limit for filing a particular Section 1983 action.  Baker v. Bd. of Regents of Kan., 991 F.2d 628, 630 (10th Cir. 1993).  The parties agree that a two-year statute of limitations applies here, and that plaintiff's causes of action accrued on October 2, 2007.  See K.S.A. § 60–513.[1]  Plaintiff's claims are thus time-barred unless she establishes a factual basis for tolling the statute.  Aldrich, 627 F.2d at 1041 n.4.

---

[1]     K.S.A. § 60-513 states in relevant part as follows:

> (a)  The following actions shall be brought within two years: * * *
>      (4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.

K.S.A. § 60-513(a)(4).

### C.  Qualified Immunity

Qualified immunity shields government officials from individual capacity liability for performing discretionary acts so long as their conduct does not violate clearly-established statutory or constitutional rights about which a reasonable person would know.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts.  See Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985).  The doctrine of qualified immunity serves the goals of protecting officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.  Butz v. Economou, 438 U.S. 478, 506 (1978).  To survive a qualified immunity defense, plaintiff must allege that defendants either (1) personally participated in the alleged constitutional violation, Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997), or (2) in a supervisory capacity, created, promulgated or implemented a policy which deprived plaintiff of her constitutional rights, acting with the state of mind required to establish the alleged constitutional deprivation,  Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 131 S. Ct. 2150 (2011) (quotation omitted).

To analyze a qualified immunity defense in a motion to dismiss, the Court considers whether plaintiff has alleged facts which make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendants' alleged misconduct.  Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011) (quotations omitted).  Whether a right is "clearly established" is an objective test: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010) (quotation omitted).  "In order for the law to be clearly

established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id. (quotation omitted). And, in the Tenth Circuit, it is "particularly important" that the Section 1983 complaint makes clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state. Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011) (internal quotations omitted).

### Factual Background

Viewed in the light most favorable to plaintiff, the complaint and record evidence are as follows:[2]

From November 16, 2006 through May 18, 2010, plaintiff was an inmate of the Kansas Department of Corrections ("KDOC") at TCF. During some or all of this period, defendants worked at TCF: Werholtz as Secretary of Corrections, Koerner as Warden, Cummings as Deputy Warden, Robertson as Captain, Essman as shift supervisor and Gallardo as an instructor and maintenance worker.

Keith participated in the plumbing/maintenance program at TCF and Gallardo was her

---

[2]    In support of their motion, defendants attach several exhibits, all of which plaintiff references or quotes in her complaint. Specifically, defendants attach the Performance Audit Report to the Legislative Post Audit Committee ("Performance Audit") (Docs. ##8-1, 8-2), the article entitled "Women's prison: Sex trade" published October 3, 2009 in the Topeka-Capital Journal, and the Application To Modify Plea To Guilty/No Contest And Advice Of Rights In Regards Thereto from Shawnee County Kansas District Court Case No. 08CR00433, dated June 19, 2008. In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider (1) indisputably authentic copies of documents if plaintiff referred to them in the petition and the documents are central to plaintiff's claims and (2) facts which are subject to judicial notice. GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). Plaintiff does not dispute the authenticity of the documents, which appear to be central to her claims.

instructor.  On October 2, 2007, Gallardo forced plaintiff to have sex with him.  Afterward, he smuggled morning-after pills to her and tried to give her the abortion pill RU486, but plaintiff became pregnant.   In mid-November of 2007, another inmate told guards about Keith's pregnancy, and on December 19, 2007, a state victim services liaison drove Keith to the Johnson County Planned Parenthood Clinic, where she had an abortion.

Gallardo stopped coming to work at TCF in early November of 2007 and his wife found out about his conduct a few weeks later.  Gallardo was later charged in Shawnee County, Kansas and on June 19, 2008, he pleaded guilty to unlawful sexual relations and two counts of trafficking in contraband in a correctional institution.  While employed at TCF, Gallardo had sex with as many as six other female prisoners and threatened to harm anyone who "broke their code of silence."  In October of 2007, Gallardo had sex with an inmate V.S. in the TCF maintenance building.  The TCF chief investigator interviewed her and afterward, she was told not to talk to anyone about it and sent to maximum security for approximately 30 days.

In June of 2005, another TCF inmate filed a lawsuit (Case No. 05-cv-3397-JTM-DWB) alleging that male officers, including Essman, strip-searched her.  Essman testified by affidavit that during the strip-search he watched while another office (Van Dyke) cut off the inmate's clothing because it was necessary to prevent the inmate from harming herself.  The Martinez Investigative Report in that case indicates that after the incident, the warden (Koerner) clarified the policy to require that only female officers should forcibly remove an inmate's clothing unless a true emergency situation exists.  The suit was dismissed on summary judgment.  Plaintiff alleges that Essman hired Van Dyke and shared some of Van Dyke's attitudes toward sexual conduct.

On October 3, 2009, the Topeka Capital-Journal published an article entitled "Women's

prison: Sex trade."  The reporter interviewed plaintiff at the prison and the article quotes plaintiff as she discusses Gallardo and specific details about the sexual assault which occurred on October 2, 2007. In the article, Werholtz acknowledged that inmates and prison staff enter into consensual relationships.  In the 2010 Performance Audit, he admitted that that prison staff had made the wrong choices.  He also said that studies in Kansas show that veteran prison employees are just as likely to be caught up in bad activities as young and inexperienced staff members, and that there were likely things going on that prison staff did not know about.

Koerner treated corrections officers involved in disciplinary cases differently and his definition of "undue familiarity" changed on a whim.  In 2003, he dismissed a sergeant after four warnings for engaging in undue familiarity with the same female inmate.  In 2007, Koerner suspended an officer for 10 days after his third instance of undue familiarity with an inmate. Koerner allowed another corrections officer to resign after being accused of unlawful sexual relations with a female inmate.   As warden of TCF, Koerner is responsible for its overall management, including disciplinary action of staff.   The Performance Audit indicates that "conditions were ripe for staff misconduct" in the vocational program involving Gallardo and that Koerner knew of issues with the program but did not make changes necessary to remedy them until after Keith became pregnant.  Koerner knows that employees try to avoid detection when they grope inmates during the pat-down process.

Plaintiff alleges that in 2001, an inmate took semi-nude photographs of herself and gave them to Robertson because the inmate wanted to start a relationship with him.  He confiscated the photographs but did not report the contraband within 48 hours as policy required and was fired.  He was later reinstated.  In 2006, he became involved in a relationship with an inmate who exposed herself to him and handled his genital area.

Plaintiff generally alleges that Koerner, Cummings, Essman, Roberson, and Werholtz all managed staff and inmates and were responsible for hiring, firing, discipline, training and supervising corrections officers and other staff. She alleges that these defendants knew about numerous cases of undue familiarity and sexual misconduct at TCF. For example, she alleges that between June of 2003 and August of 2005, someone at TCF sent Form 9s to TCF administration reporting a relationship between a corrections officer and an inmate. The officer was not disciplined but the inmate was placed into administrative segregation for more than 70 days. She also alleges that another corrections officer (Van Dyke) regularly bragged about his sexual conduct with inmates, fellow officers, and nurses and fathered an inmate's child. In 2003, a TCF store keeper specialist was suspended for 7 days and eventually terminated after taking inappropriate photographs of inmates. She also alleges that these defendants all knew that heavy magnets were affixed to security cameras to try to distort video images.

Plaintiff alleges that during her incarceration, she was prevented from accessing the courts because (1) KDOC employees repeatedly instructed her not to speak with anyone or disclose anything about "the events at issue;" (2) Gallardo threatened to kill anyone responsible for disclosing the details described in the complaint such that his wife would learn about them; and (3) TCF had an overall atmosphere of intimidation while plaintiff was incarcerated.

### Analysis

### A.  Statute Of Limitations

The complaint alleges that K.S.A. § 60–515(a) tolled the statute of limitations until May 18, 2010, when plaintiff was released from prison because during her incarceration she

could not access the courts.[3]  Specifically, it alleges that (1) KDOC employees repeatedly instructed plaintiff not to speak with anyone or disclose anything about "the events at issue;" (2) Gallardo threatened to kill anyone responsible for disclosing the details of the assault such that his wife would learn about them; and (3) TCF had an overall atmosphere of intimidation while plaintiff was incarcerated there.

Defendants argue that K.S.A. § 60–515(a) does not apply because plaintiff has not sufficiently alleged that she could not access the courts during her incarceration.  Specifically, defendants argue that the allegations which form the basis of plaintiff's tolling argument are conclusory and contradicted by other factual allegations within the complaint.  Defendants argue that plaintiff's claims, which accrued on October 2, 2007, should thus be dismissed because she filed her complaint more than two years later.  K.S.A. § 60-513(a)(4).  Finally, defendants argue that Kansas courts do not recognize duress as a basis for tolling the limitations period.

Plaintiff notes that no court has analyzed K.S.A. § 60–515(a) under similar facts, provides some additional affidavit testimony to supplement the allegations in her complaint and argues that whether she sufficiently pleads facts which support tolling is a question of fact which

_____

[3]         K.S.A. § 60–515 states in relevant part as follows:

> [I]f any person entitled to bring an action . . . at the time the cause of action accrued or at any time during the period the statute of limitations is running, is . . . imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed . . .

> Notwithstanding the foregoing provision, if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability.

K.S.A. § 60–515(a).

the Court cannot appropriately resolve on a motion to dismiss.  Plaintiff is correct that the cases which interpret and apply K.S.A. § 60–515(a) do not involve facts similar to the facts upon which she bases her tolling argument.  Plaintiff bears the burden to assert facts in the complaint which justify applying the tolling provisions of K.S.A. § 60–515(a), just like a plaintiff who alleges a constitutional violation bears the burden to allege facts which state a plausible claim.  See Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 n.1 (10th Cir. 1980).  When the dates in the complaint make clear that the right sued upon has been extinguished, plaintiff has the burden to establish a factual basis for tolling the statute, which may be appropriately resolved in a motion under Fed. R. Civ. P. 12(b).  Id.

Prisoners have a longstanding constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 821 (1977).  As such, myriad cases analyze violations of the right of access to the courts and provide pleading standards for those who allege such claims.  Government action which chills constitutionally protected speech or expression contravenes the First Amendment.  Wolford v. Lasater, 78 F.3d 484, 488 (10th Cir. 1996).  Here, plaintiff has alleged that threats by defendants – specifically Gallardo – prevented her from accessing the courts during her confinement.   In the Court's view, and drawing on its judicial experience and common sense, plaintiff has asserted sufficient facts to justify applying the tolling provision to survive a motion to dismiss.  See Rogers v. Garcia, No. 08-cv-02821-WYD-MJW, 2010 WL 3547432, at *3-6 (D. Colo. Sept. 3, 2010) (collecting cases).  Defendants present facts which purport to contradict plaintiff's allegations, but in deciding a motion to dismiss the Court cannot make credibility determinations about plaintiff's subjective state of mind.  Finally, the Court is not persuaded that P.W.P. v. L.S., 266 Kan. 417, 969 P. 2d 896 (1998), forecloses duress as a reason for tolling the statute of limitations.  Rather, in that case (which was decided at summary

judgment) the district court relied on expert testimony to find that plaintiff was not under duress and thus could not justify tolling the statute.  The Court takes this to mean that in proper cases, duress which essentially qualifies as a separate constitutional violation could justify tolling.  See e.g. Ross v. United States, 574 F. Supp. 536, 542 (S.D.N.Y. 1983). The Court therefore overrules defendants' motion on statute of limitations grounds.

### B.  Qualified Immunity

To overcome the defense of qualified immunity, plaintiff must allege facts which show how each named defendant, either through personal participation or in the promulgation of a policy, violated a clearly established constitutional right.  Brown, 662 F.3d at 1165.  It is not enough for the complaint to lump the named defendants together.  Id.  Rather, individualized allegations of specific actions taken by particular defendants are especially important where each defendant has different powers and duties.  Id.  When defendants are grouped in a single allegation, a complaint fails to isolate the allegedly unconstitutional act(s) of each defendant.  Id.

Here, plaintiff sufficiently alleges that Gallardo personally violated her constitutional rights: sexual assaults constitute a violation under the Eighth Amendment.  Smith v. Cochran, 339 F.3d 1205, 1215 (10th Cir. 2003).  Plaintiff does not allege, however, that the individual remaining defendants participated in Gallardo's constitutional violation or knew that she faced a substantial risk of serious harm from him and chose to ignore it.  Bruner-McMahon v. Hinshaw, No. 10-1064-KHV, 2012 WL 138607, at *16 (D. Kan. Jan. 18, 2012).  Thus, plaintiff does not allege facts which show that the named defendants, other than Gallardo, personally participated in violating a clearly established constitutional right.

In Dodds, Brown, and Robbins, the Tenth Circuit clarified the pleading standards necessary to impute supervisor liability after Iqbal and Twombly.  A complaint which refers to

the actions of "defendants" is not sufficient to show how each individual defendant is liable for deprivations of constitutional rights.  Brown, 662. F.3d at 1165.  Thus, plaintiff cannot save herself from this requirement by specifically naming each defendant in what is otherwise a general allegation of misconduct.  And while plaintiff correctly notes that a moment-by-moment pleading is not required, see Dodds, 614 F.3d at 1199, the law does require some affirmative link between the constitutional violation and "either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Id. at 1211.

> Thus, it is not enough to merely show that a supervisor should have known that a subordinate was violating someone's constitutional rights – rather, only a supervisor's actual knowledge of his subordinate's behavior demonstrates the requisite deliberate, intentional act by the supervisor to violate constitutional rights. Negligence – even gross negligence, is insufficient to prove that a supervisor caused a violation.

Id.  In sum, a supervisor is only liable for violations that he caused, and causation requires at least some degree of fault on the supervisor's part.  Id.  After Iqbal, plaintiff can no longer succeed on a Section 1983 claim by showing that a defendant supervisor behaved "knowingly or with 'deliberate indifference' that a constitutional violation would occur" at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation she alleges.  Id. at 1204.  In the Eighth Amendment context, a prison official is liability only if he knows of and disregards an excessive risk to inmate health and safety.  Gonzalez v. Martinez, 403 F.3d 1179, 1186 (10th Cir. 2005).

Here, the Court finds that plaintiff has alleged facts sufficient to state a plausible claim against defendant Koerner, who was responsible for managing TCF and knew about multiple instances of sexual misconduct at TCF over a period of years, inconsistently disciplined corrections officers who engaged in prohibited sexual conduct with inmates and thus purportedly

tolerated at least an informal policy which permitted sexual contact between prison staff and inmates.

Plaintiff makes no specific allegations about Cummings, and the Court thus dismisses plaintiff's claims against him.   And while the complaint does make some individualized allegations against Essman, Robertson and Werholtz, the allegations contain no affirmative link with Gallardo's conduct.  The Court thus dismisses plaintiff's claims against Werholtz, Essman, and Robertson.

Plaintiff's claims against defendants Gallardo and Koerner remain in the case.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss Plaintiff's Complaint (Doc. #7) filed July 15, 2011 by Werholtz, Koerner, Cummings, Essman, and Robertson be and hereby is **SUSTAINED in part**.  Plaintiff's claims against Gallardo and Koerner remain in the case.  The claims against Werholtz, Cummings, Essman and Robertson are **DISMISSED.**

Dated this 28th day of March, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge