## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TRACY KEITH,

                **Plaintiff,**

v.                                                          **Case No. 11-CV-2281-DDC-JPO**

RICHARD D. KOERNER AND
ANANSTACIO GALLARDO,

                **Defendants.**

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Richard Koerner's Motion for Summary Judgment (Doc. 72). Having considered the arguments of the parties and the relevant authorities, the Court denies the motion. This order explains why.

### I.      Procedural History

Plaintiff, once an inmate in the custody of the Kansas Department of Corrections ("KDOC") and imprisoned at its Topeka Correctional Facility ("TCF"), has sued under 42 U.S.C. § 1983. She asserts that defendants violated her rights under the Eighth Amendment. Originally, she named six defendants but the Court dismissed the claims against all of them except defendants Ananstacio Gallardo[1] and Richard Koerner. (*See* Doc. 25) Defendant Koerner served as the Warden of TCF during plaintiff's incarceration there.

Defendant Koerner moved to dismiss, arguing in part that Kansas's two-year statute of limitations, K.S.A. § 60-513, bars plaintiff's claims against him. The Court denied his motion,

---

[1] Defendant Gallardo failed to answer plaintiff's Complaint. After plaintiff timely applied to the Court, the Clerk entered a default judgment against defendant Gallardo on January 4, 2012. (Docs. 16, 17)

holding that "plaintiff ha[d] asserted sufficient facts to justify applying the tolling provision to survive a motion to dismiss." (Doc. 25 at 10 (citation omitted)) Defendant Koerner asked the Court to certify the statute of limitations issue for an interlocutory appeal. (Doc. 28) Judge O'Hara recommended that the Court deny the motion because the motion to dismiss did not involve a controlling issue of law, and defendant objected to Judge O'Hara's Report and Recommendation. (*See* Doc. 28, 38 at 4-6) Judge Vratil overruled defendant's objections, noting that "the matter involved a question of fact which, on a motion to dismiss, must be resolved in favor of plaintiff." (Doc. 42 (citing Doc. 38 at 5))

After the parties conducted limited discovery, defendant Koerner brought the current motion for summary judgment. It again presents arguments based on the statute of limitations. Plaintiff's response contends that statutory or equitable tolling saves her claims from the otherwise dispositive effect of Kansas's two-year statute of limitations. Defendant's motion does not call on the Court to consider the substantive merits of plaintiff's claim.

## II.    Facts[2]

Plaintiff was incarcerated at the TCF from November 16, 2006, to May 18, 2010. KDOC employed defendant Ananstacio Gallardo as a maintenance instructor at the TCF. Plaintiff enrolled in a vocational plumbing class taught by defendant Gallardo and on October 2, 2007, defendant Gallardo forced plaintiff to engage in sexual intercourse with him. This resulted in a pregnancy. When defendant Gallardo learned that plaintiff was pregnant, he told her: (a) he "would kill anyone responsible if and when his wife found out what had happened;" (b) "I'm going to have someone kill you if my wife finds out;" and (c) "They're not going to believe you anyway."

---

[2] Consistent with the summary judgment standard this section states uncontested facts and where facts are contested based on admissible evidence, the facts in a light most favorable to plaintiff.

Fearing she would get in trouble, plaintiff did not alert TCF authorities that Gallardo had raped her or that she was pregnant.  On November 15, 2007, KDOC learned about the rape and plaintiff's pregnancy from an anonymous note claiming that plaintiff was pregnant with defendant Gallardo's child.  KDOC initiated an investigation immediately and provided independent victim services to plaintiff.  Plaintiff contends that the TCF investigator, Mr. Willie Tabor, twice instructed her not to discuss what had happened with anyone:  first during his initial investigation on November 15, 2007, and again later, when Topeka police officers interviewed her.[3]  In addition to Mr. Tabor's verbal instructions, Tabor also required plaintiff to sign an "Acknowledgement of Confidentiality" form (the "confidentiality agreement").  It provided:

> I . . . [h]ereby affirm that I understand that I am not to discuss or divulge any information I have provided, obtained or will obtain in the course of this investigation, including the fact that I have been interviewed regarding this investigation.  I understand a breach of confidentiality can result in disciplinary action.

Mr. Tabor had drafted the confidentiality agreement at the direction of defendant Koerner.

Plaintiff claims that she believed Mr. Tabor's instructions forbade her from speaking about Gallardo's rape with "anyone" as long as she was incarcerated.  Despite plaintiff's understanding of Mr. Tabor's instructions and the confidentiality agreement,  plaintiff concedes she spoke with several people about the experience during her incarceration, including: employees of the Topeka Police Department; employees of the state of Kansas; independent counselors; plaintiff's direct family; her attorney; and a newspaper reporter.  Plaintiff believed that this prohibition against speaking with "anyone" did not extend to "anyone [who was] brought in by the facility to speak to me about the incident[,]" which encompassed all of the aforementioned people with two exceptions:  her attorney and the newspaper reporter.  (Doc. 73-

---

[3] TCF staff referred the case to the Topeka Police Department for further investigation and prosecution of defendant Gallardo.

2 at 313:13-315:17)

Plaintiff believes she never was released from the terms of the written confidentiality agreement.[4]  She concedes that sometime before August 10, 2009, an unnamed TCF employee advised her to contact Keen Umbehr, a Kansas attorney, about the rape.  Plaintiff acted on this advice, writing Mr. Umbehr a letter within a couple of days of the suggestion and ultimately, she entered into a legal representation contract with Mr. Umbehr on July 30, 2009.

Mr. Umbehr called TCF on August 7, 2009, and requested a meeting with plaintiff.  Inmates at TCF are allowed to meet with their attorneys any time after the attorney submits a request to the facility.  On August 10, 2009, plaintiff met with Mr. Umbehr and *Topeka Capital Journal* reporter Tim Carpenter, and they discussed the Gallardo incident.  Plaintiff participated in this meeting because she wanted an attorney's advice about what she should or could do.  After this meeting on August 10, 2009, the Deputy Secretary of Corrections filed an ethics complaint against Umbehr, which the Kansas Disciplinary Administrator's Office processed over the next two years.  The record contains no evidence that Mr. Umbehr took any action on plaintiff's behalf after the meeting on August 10, 2009, or after KDOC's Deputy Secretary filed the ethics complaint against Umbehr.

At some point between November 5, 2007, and December 19, 2007, plaintiff asserts, two

---

[4] Defendants contend, "Plaintiff was never under a KDOC prohibition in regard to discussing the events at issue." (Doc. 75 at 4)  But the written confidentiality agreement will not abide this position as an undisputed fact.

The terms of that writing, prepared at defendant's request, forbade plaintiff from "discuss[ing] or divulge[ing] any information [she] provided, obtained, or will obtain in the course of this investigation . . . ."  Since Mr. Tabor's investigation focused on Gallardo's rape of plaintiff, a reasonable jury could infer that he interviewed plaintiff about the rape.  Thus, because the written agreement forbade plaintiff from discussing or divulging anything she "provided" to Mr. Tabor, a reasonable jury could conclude that plaintiff was restricted from discussing or divulging the rape.

TCF inmates kicked her in the stomach and head and other unspecified TCF inmates threatened

her.  Plaintiff never reported the attack or threats to TCF's staff, and she did not seek available

medical care after the attack even though she claims it injured her.  In July 2009, plaintiff was

moved to the J-Cell House, a different location within TCF, pending resolution of an unrelated

matter.  And while no inmates threatened plaintiff while she was housed in the J-Cell House, and

thus did not fear attack while stationed there, she later asked to return to her previous compound

within TCF.  Plaintiff explains that she asked to go back to her previous compound so she could

return to an industry job that allowed her to make money.

During her entire imprisonment at TCF, plaintiff asserts an "atmosphere of intimidation"

existed and it prevented her from filing a lawsuit based on defendant Gallardo's having raped

her.  Plaintiff defined this "atmosphere" in the following fashion:

> [i]t's being in prison, period.  There's going to be an atmosphere of intimidation
> because you're going to have people with power over you, period, beyond what
> happened to me.  There's -- it's intimidating to have someone have control of
> your life like that. . . .  it was scary and intimidating. . . .  It's an awful feeling.
> Factor in what happened to me and how I -- I was completely cut off from
> everyone even talking to me and -- and people judging me continuously.  And, the
> fear that I've been told one thing by a prison official, which was Lieutenant Tabor
> . . . .  You were not to speak about this to anybody whatsoever.  If you do then
> I'm thinking this is going to happen . . . . there was a[n] overall atmosphere the
> entire stay.

(Doc. 73-2 at 324:10-325:11)  Plaintiff also asserts that she sensed this atmosphere of

intimidation based on the following things she believed to be true while incarcerated at TCF:[5]

- the regular practice of punishing prisoners who had filed grievances by placing them into
  segregation during the investigations;

- the threat of disciplinary action if prisoners discussed or divulged any information about

---

[5] The Court does not suggest that any of these circumstances actually existed.  Instead, for
summary judgment purposes, it merely accepts as true that plaintiff believed these circumstances
existed.

their grievances;

- the communication to her that no one would believe anything that she, as a prisoner, would say;

- the absence of any communication to her at the conclusion of TCF's investigation of the rape; and

- her impression that grievances almost never resulted in any action against TCF employees.

Additionally, plaintiff says she heard rumors of the following conditions inside TCF: inmates who reported sexual misconduct or filed grievances were placed in segregation during the investigation, seemingly as punishment for reporting the purported misconduct; complaints or grievances were not welcomed; and segregation could be lengthy. Plaintiff concedes she has no personal knowledge that these rumors were true. Defendant admits, meanwhile, that plaintiff may have believed these things but denies their truth.[6]

Plaintiff also says she was frightened of defendant Gallardo and the other prison employees. Plaintiff Tracy Keith is about 5'5" tall and weighed around 156 pounds at the time of her incarceration. Gallardo was about 6'1" tall and weighed at least 300 pounds. Some of the men employed by TCF were bigger than plaintiff. Plaintiff testified that she believes defendant Gallardo is a liar and that she does not believe anything he said about the rape. Nonetheless, she says she is still fearful to this day that he might send someone to hurt her.

Plaintiff asserts that she took seriously the orders from Tabor not to speak to anyone about the rape and the warnings of disciplinary action contained in the Acknowledgment of Confidentiality form. She also asserts that she took defendant Gallardo's threats seriously. Plaintiff understood that "disciplinary action" at TCF could be very severe, including segregation/isolation, refusal of personal hygiene items, the loss of "good time" toward sentence

---

[6] The summary judgment record establishes neither the truth nor falsity of these rumors.

reduction, the loss of privileges, extra work, fines, restriction to one's own cell, and the possibility that any "disciplinary action" might escalate into new criminal charges, among other things.  Plaintiff claims she assumed that she would violate the written and verbal confidentiality orders if she filed anything about the rape in a court anywhere.

Before the rape occurred but during her incarceration at TCF, plaintiff had filed two motions in an unrelated Johnson County, Kansas court case:  a motion to correct an illegal sentence (filed in January 2007); and a motion seeking a transcript (filed in September 2007).  She also attended court proceedings in a Johnson County court case while still in custody.  In addition, in February 2008, plaintiff filed documents in a second unrelated court case in Henry County, Missouri, and in 2009, TCF employees helped plaintiff file documents in a third unrelated court case in Jackson County, Missouri.  Plaintiff concedes she was able to attend and participate in certain court proceedings in person while in TCF's custody.  These proceedings occurred between November 2009 and January 2010.

James Fletcher served as a Missouri Public Defender and he represented plaintiff throughout her criminal proceedings during 2009 and 2010 in Jackson County, Missouri, Case No. 0816-CV01075.  Public Defenders who serve in the Missouri Public Defender System may provide legal services only to indigent persons charged with crimes within the state of Missouri.  Missouri Public Defenders have no authority to file civil actions for anyone, anywhere.

On October 9, 2009, plaintiff filed Grievance # 87507 with KDOC about Gallardo's rape.  Plaintiff testified that she was willing to file her grievance at that time because she had served almost all of her sentence and could "handle" any repercussions or punishment for the

approximately 120 days or so she had left to serve on her sentence.[7]

Defendant Richard Koerner served as the Warden of the TCF at all times relevant to this incident. This includes October 2007 (when plaintiff was raped) and October 2009 (when plaintiff filed Grievance # 87507). While plaintiff was fearful of the overall atmosphere of intimidation that she perceived to exist during her entire stay at TCF, neither defendant Koerner nor any other TCF employee ever threatened plaintiff with retaliation after she was raped. TCF took no disciplinary action against plaintiff because of the rape or her reaction to it.[8] Plaintiff filed the Complaint in this case on May 17, 2011, almost exactly one year after her release from TCF. This filing occurred three years and seven months after plaintiff was raped.

## III.   Legal Standard

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Garrison*, 428 F.3d at 935. A "genuine" issue exists where there is sufficient evidence such "that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition

---

[7] Specifically, plaintiff said she was "free and clear and almost gone" and that she felt that she "could deal with any other problems . . . or . . . things that [she] was scared of."

[8] In fact, plaintiff was disciplined just once during her entire incarceration. It occurred before she was raped.

of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The movant initially carries the burden to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).   The movant may prevail solely by demonstrating "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671 (citing *Celotex*, 477 U.S. at 325).  If the movant meets this burden, the nonmovant must "go beyond the pleadings" and show admissible evidence "from which a rational trier of fact could find for the nonmovant." *Id.* (citing Fed. R. Civ. P. 56(e); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248).  The essential question, then, is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## IV.   Analysis

### A.  Statute of Limitations

Claims brought under § 1983 "are subject to the statute of limitations for personal injury [claims] in effect in the state where the alleged violations occurred." *Shaw v. Simmons*, 91 F. App'x 93, 94-95 (10th Cir. 2004) (citing *Garcia v. Wilson*, 731 F.2d 640, 642-43, 651 (10th Cir. 1984)).  Here, the alleged violations occurred in Kansas, where defendant Gallardo raped plaintiff while incarcerated at the TCF.

K.S.A. § 60-513(a)(4) supplies the Kansas statute of limitations for personal injury claims.  It provides, "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated" "shall be brought within two years."  K.S.A. § 60-513(a)(4); *see also*

*Hamilton v. City of Overland Park, Kan.*, 730 F.2d 613, 614 (10th Cir. 1984).  The parties agree this two-year statute of limitations applies to plaintiff's claim.  They also agree that plaintiff's cause of action arose on October 2, 2007, when defendant Gallardo raped her.  *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir.) ("A § 1983 action accrues when facts that would support a cause of action are or should be apparent." (citation and internal quotation marks omitted)), *cert. denied*, 549 U.S. 1059 (2006).  And last, the parties agree that plaintiff filed this lawsuit more than two years after the rape occurred.

Given this timeline, § 60-513 bars plaintiff's claim unless some other statute or doctrine spares it from the limitations statute.  Here, plaintiff contends two things rescue her claim.  First, she argues a Kansas statute tolls the limitations period imposed by § 60-513(a)(4).  (Doc. 74 at 31-36)  Second, and assuming she does not qualify for statutory tolling, she argues that the summary judgment facts provide a basis for the Court to apply equitable tolling principles.  (*Id.* at 40-47.)  These equitable principles, she argues, independently spare her claim from summary judgment.

The next two sections address plaintiff's two arguments separately, in turn.

### B.  Statutory Tolling

Plaintiff's statute-based tolling argument relies on K.S.A. § 60-515(a).  As pertinent here, this statute provides:

> [I]f any person entitled to bring an action . . . at the time the cause of action accrued or at any time during the period the statute of limitations is running, is . . . imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed . . . .

> Notwithstanding the foregoing provision, if a person imprisoned for any term *has access to the court for purposes of bringing an action*, such person shall not be deemed to be under legal disability.

K.S.A. § 60-515(a) (emphasis added).  Plaintiff contends this provision tolled the statute of limitations—stopped the statute's two-year clock—until the KDOC released her from prison on May 18, 2010.

Two aspects of this tolling statute are well-settled.  First, just as federal law borrows statutes of limitations from state law, it also borrows "generally applicable" state tolling statutes and applies them to claims made under § 1983.  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 616 (2013); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014).  Second, and typical of the summary judgment threshold, a plaintiff may not reap the benefit of a tolling provision simply by saying that it applies.  Instead, at summary judgment a party must show that admissible evidence, if true, will support a claim or defense.  *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." (citing *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 597 (4th Cir. 1976); *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 948 (3d Cir. 1971)); *see also Petroleum Prods., Inc. v. Total Petroleum, Inc.*, 795 F. Supp. 356, 361 (D. Kan. 1992) (plaintiff must come forward with facts to support tolling of the statute of limitations to survive a summary judgment motion).

Here, the parties agree that plaintiff, at worst, has discharged the initial requirement imposed by § 60-515(a).  She has established that she was "imprisoned for a term less than [her] natural life" when her cause of action accrued.  And so, without more, § 60-515 would seem to establish a new deadline for plaintiff to have filed her suit, *i.e.*, "within one year after" the KDOC released her from custody.  *Id.*  Because plaintiff filed her suit on May 17, 2011—just ahead of the one-year anniversary of her release—she has established the tolling provision's first

requirement.

Defendant correctly points out, though, that § 60-515(a) contains a second paragraph and thus the analysis cannot end simply with plaintiff's showing that she was imprisoned during the relevant period.  Defendant's argument relies on these words in § 60-515(a):  "Notwithstanding the [rest of § 60-515(a)], if a person imprisoned for any term *has access to the court for purposes of bringing an action*, such person shall not be deemed to be under [a] legal disability."  *Id.* (emphasis added).  Defendant contends the undisputed facts show plaintiff had "access to the court for purposes of bringing an action" after her cause of action accrued—but while still imprisoned—and this negates the legal "disability" arising from her incarceration.  *Id.* Therefore, defendant argues, this part of § 60-515(a) nullifies the tolling provision and reactivates the statute of limitations in a fashion that bars plaintiff's claim.

These competing positions set the stage for the decisive issue of this summary judgment motion:  Could a reasonable jury, viewing the evidence in the light most favorable to plaintiff and giving her the benefit of all reasonable inferences, conclude that she lacked "access to the court for purposes of bringing an action?"  If so, the Court must deny defendant's motion.

### 1.  Who shoulders the burden of proving whether plaintiff had access to the courts?

Before the Court can turn to the substance of this dispositive issue, it first must consider a threshold issue:  Who bears the burden of proof on this decisive question?  The Kansas Supreme Court has assigned the various burdens in this fashion:  "The statute of limitations is an affirmative defense and the burden of pleading and providing its applicability rests on the defendant.  However, the burden of proving facts sufficient to toll the statute of limitations is upon plaintiff."  *Slayden v. Sixta*, 825 P.2d 119, 122 (Kan. 1992); *Ventris v. Kansas*, No. 11-3013-SAC, 2012 WL 4933324, at *3 (D. Kan. Oct. 16, 2012).

The court notes that *Slayden* construed K.S.A. § 60-517, a different tolling statute than the one at issue here, § 60-515(a).  But there are sufficient parallels between the two tolling statutes to conclude that the Kansas Supreme Court would assign the burdens under § 60-515(a) the same way *Slayden* did under § 60-517.  Namely, § 60-517 and § 60-515(a) both contain tolling and anti-tolling provisions.  More specifically, § 60-517 tolls the limitations clock when a putative defendant is "out of the state, or has absconded or concealed himself or herself."  But the limitations' clock restarts under this statute if the defendant's "whereabouts are known" and he can be served under the Kansas rules governing service of process.  Section 60-515(a) is similar, stopping the limitations clock if plaintiff is incarcerated but restarting the limitations period if he has access to the court for purposes of bringing an action.  *Id.*  And while one can make a plausible argument for assigning the burdens differently than *Slayden* did,[9] this would miss the controlling point:  Our Court must apply the rule adopted by the Kansas Supreme Court[10] and the Kansas court has assigned plaintiff the "burden of proving facts sufficient to toll the statute of limitations."  *Slayden*, 825 P.2d at 122.  Consistent with this rule, the next section discusses whether plaintiff has discharged her burden under § 60-515(a), the tolling provision she invokes.

**2.  What does the phrase "access to the court" in § 60-515(a) mean?**

Since the operative question asks whether plaintiff had "access to the court for purposes of bringing an action," the Court must determine what such access looks like in the eyes of

---

[9] For instance, the *Slayden* rule imposes a duty on plaintiffs arguing for tolling under § 60-517 to prove a negative, *i.e.*, that defendant's "whereabouts [were not] known."  Here, the *Slayden* approach, as applied to § 60-515(a), requires plaintiff to prove she lacked access to the court.

[10] *Cheek v. City of Edwardsville, Kan.*, No. 06-2210-JWL, 2007 WL 4163421, at *2 (D. Kan. Nov. 21, 2007), *aff'd*, 324 F. App'x 699 (10th Cir. 2008) (stating that this Court is "duty-bound" to follow controlling precedent from the Kansas Supreme Court on state law issues).

Kansas law.  Kansas law does not provide a precise answer, as the Court has not found a decision

by the Kansas Supreme Court or the Kansas Court of Appeals delineating a clear standard.  The

closest comes from *Contreras v. State*, where the Kansas Court of Appeals referred to the denial

of such access as an "insurmountable barrier."  253 P.3d 385, 2011 WL 2534998, at *2 (Kan. Ct.

App. June 17, 2011) (unpublished table opinion).  But in fairness, *Contreras* does not advance

this phrase as the standard governing a prisoner/plaintiff's argument he lacked access to the court

under § 60-515(a).  *Id.*

     Lacking authority from the Kansas state appellate courts, the Court looks to the federal

courts' interpretations of this phrase in § 60-515(a).[11]  In *Cameron v. Stotts*, the Tenth Circuit

held, "[u]nder section 60-515(a), a prisoner has access to the courts when he is able to file a

complaint."  43 F.3d 1482, 1994 WL 697385, at *1 (10th Cir. Dec. 13, 1994) (unpublished table

opinion) (citing *Williams v. Olathe, Kan. Police Dep't*, No. 91-3100, 1991 WL 191073, at *2

(10th Cir. Sept. 26, 1991); *Duncan v. Jenkins Co.*, No. 93-2459-JWL,  1994 WL 377148, at *2

(D. Kan. June 28, 1994)).  Because the prisoner/plaintiff in *Cameron* had managed to file the

Complaint that commenced that case, the Circuit concluded, unsurprisingly, that he had the

requisite access.  *Id.*

     In *Ventris v. Kansas*, Judge Crow referenced a slightly more forgiving formulation to

address facts not quite so one-sided as those in *Cameron*.  In *Ventris*, a prisoner/plaintiff's suit

against the state of Kansas required Judge Crow to ascertain the meaning of § 60-515(a) and

apply it in the context of a motion to dismiss.  2012 WL 4933324, at *6.  Judge Crow began his

analysis by noting that the Constitution long has given inmates a right to "'adequate, effective,

---

[11] *See Specialty Beverages, LLC v. Pabst Brewing, Co.*, 537 F.3d 1165, 1174 (10th Cir. 2008)
(considering decisions from the federal district court in the state in order to predict what the
state's highest court would do).

and meaningful access to the courts.'" *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)).

Judge Crow then explored what this right requires, in practical terms, and explained what a

prisoner must show to support a claim that prison officials have deprived him of this right:  "To

establish a violation of [a prisoner's] constitutional right of access [to the courts], an inmate must

demonstrate, among other things, how the alleged shortcomings in the prison actually 'hindered

his efforts to pursue a legal claim.'"  *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

And finally, Judge Crow concluded that a prisoner/plaintiff seeking to invoke this Kansas tolling

provision must make a showing similar to the one required to support a constitutional claim of

lack of access:

> The same specificity is required for an inmate's claim of tolling based on lack of
> access to the courts.  *Cf. Mayes v. Province*, 376 Fed. App'x 815, 816-17 (10th
> Cir. 2010) (examining [28 U.S.C. §] 2244(d)(1)(B)'s tolling provision for habeas
> action's one-year statute of limitations).  *Plaintiff must explain "how the prison's
> alleged constitutional deficiencies hindered his efforts to pursue his claim within
> the prescribed statute of limitations."*

*Ventris*, 2012 WL 4933324, at *6 (quoting *Mayes*, 376 Fed. App'x at 816-17) (emphasis added).

### 3.  Did plaintiff have "access to the court for purposes of filing an action?"

The summary judgment facts establish that defendant Koerner directed his subordinate,

investigator Tabor, to secure plaintiff's signed commitment to a confidentiality agreement.  This

agreement bound plaintiff "not to discuss or divulge any information [she has] provided [to the

prison officials investigating the rape], obtained or will obtain in the course of this investigation

. . . ." (Doc. 74-2 at 1)  It also exposed plaintiff to punishment for breaching the agreement:

"[A] breach of [this] confidentiality [requirement] can result in disciplinary action."  *Id.*  Based

on this restriction, when viewed in the light most favorable to plaintiff, a reasonable jury could

find that plaintiff lacked the ability to file a complaint.  *Cameron*, 1994 WL 697385, at *1.

Likewise, a reasonable jury could conclude that plaintiff's disclosure of the fact that Gallardo

had raped her would result in punishment imposed by prison officials and thus conclude that prison officials had foreclosed or hindered plaintiff's efforts to pursue her claim. *Ventris*, 2012 WL 4933324, at *6. Such findings would suffice to confer the benefit of the tolling provision in § 60-515(a).

### 4. Defendant's arguments to the contrary do not meet his summary judgment burden.

Trying to support his motion for summary judgment, defendant Koerner makes several attacks on plaintiff's statutory tolling argument. One is based on the law, and others rely on defendant's interpretation of the facts. The next two subsections address these three arguments separately.

### a. Defendant's legal argument

Defendant argues that a plaintiff can satisfy her burden under the tolling statute only by showing that defendant Koerner *personally* deprived her of access to the courts. (Doc. 73 at 18; Doc. 75 at 20-21) Defendant contends plaintiff lacks such evidence and this entitles him to summary judgment.

This argument is a colorable one, for a plaintiff in a § 1983 case must show the defendant's personal involvement in the wrongdoing amounting to the constitutional violation. *See, e.g.*, *Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996))); *see also Burnett v. Leatherwood*, 557 F. App'x 739, 741 (10th Cir. 2014) ("[P]ersonal participation in the denial of access is essential" in a constitutional claim (citing *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990))). But on closer analysis, the Court concludes that defendant's argument confuses the substance of plaintiff's legal theory with the requirements of an affirmative defense invoked by defendant.

Defendant's summary judgment motion turns on the requirements imposed by § 60-515(a) and not on requirements for a claim under § 1983. Thus, the current motion does not turn on the source of plaintiff's legal theory and it is a mistake to impose that theory's requirement on a distinct analysis of a Kansas statute.

Indeed, the words in the Kansas statute are inconsistent with defendant's argument. The plain language of the Kansas tolling statute restarts the statute of limitations' clock if plaintiff had "access to the court for purposes of bringing an action." K.S.A. § 60-515(a). No words in this statute suggest a prisoner/plaintiff must link the condition restricting his or her access to file an action with defendant's personal conduct. The Kansas Supreme Court has decided that this statute is not ambiguous. *Bulmer v. Bowling*, 4 P.3d 637, 638 (Kan. Ct. App. 2000) ("The statute is clear on its face. Prisoners are considered to be under a legal disability unless they have access to the court for the purpose of bringing an action."). And in Kansas, "[t]he legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Id.* (citation omitted). In short, the Court is not free to do what defendant's argument invites— append an additional requirement to § 60-515(a).

Finally, even if the Court construed the tolling statute to require proof that defendant Koerner personally had hindered plaintiff's access to the court, the summary judgment facts provide a basis for a reasonable finding that defendant Koerner contributed to conditions that limited plaintiff's access to the court. The undisputed facts stated in the light most favorable to plaintiff establish that Koerner directed investigator Tabor to draft the confidentiality agreement that Tabor required plaintiff to sign. As discussed above, a reasonable jury could find that the

terms of the confidentiality agreement restricted plaintiff's access to the courts.

### b. Defendant's factual arguments

Defendant invokes several undisputed facts which, he argues, show plaintiff could access the courts and thus they negate application of the Kansas tolling provision. Namely, defendant argues that plaintiff:

- filed two motions in a Johnson County, Kansas court case (in January and September 2007);

- attended court proceedings of some unspecified nature in a Johnson County case while still in custody at TCF (date unspecified);

- filed documents in a Henry County, Missouri court case (2009); and

- filed documents with the Circuit Court of Jackson County, Missouri (in 2009).

The Court agrees that a reasonable jury might find these facts persuasive. Indeed, our Court has found similar facts dispositive of claims filed by prisoner/plaintiffs or former prisoners. *See*, *e.g.*, *Brown v. Gray*, No. 06-3003-JTM, 2011 WL 1097766, at *4 (D. Kan. Mar. 22, 2011) (recognizing that a prisoner who, during his incarceration, manages to file suit cannot effectively claim that he was denied access to the court); *Parker v. Bruce*, 109 Fed. App'x 317, 320 (10th Cir. 2004) (rejecting prisoner/plaintiff's lack of access argument where he conceded that he was handling other lawsuits during the time when he supposedly lacked access to the courts). But this case presents a different set of material facts.

Defendant concedes that prison officials asked the plaintiff to sign a confidentiality agreement. A reasonable jury viewing the facts in the light most favorable to plaintiff could find that plaintiff was required to agree to the restrictions in this confidentiality agreement as a condition to prison officials investigating her rape while held in custody at TCF. Such a jury thus could conclude that this agreement restricted plaintiff's ability "to file a complaint."

*Cameron*, 1994 WL 697385, at *1.  Moreover, the fact that plaintiff filed papers (or participated in legal proceedings) that were not within the scope of the confidentiality agreement does not mean a jury could draw only one reasonable conclusion, *i.e.*, that plaintiff was able to file a lawsuit based on the rape.  By its own written terms, the confidentiality agreement restricted plaintiff's ability to discuss or divulge the rape in a court filing.

Defendant also makes a related argument based on the facts that:  (a) while still incarcerated, plaintiff filed an internal grievance with KDOC about Gallardo's rape; and (b) she told an attorney and a newspaper reporter about the rape during her incarceration.  These facts, defendant contends, establish that the confidentiality agreement did not restrict her from disclosing the rape and thus no reasonable jury could conclude she lacked access to the court. These facts are more problematic for plaintiff.  They threaten the credibility of plaintiff's assertion that she believed the confidentiality agreement restricted her from divulging the rape in a lawsuit.  But likewise, a reasonable jury might find plaintiff's explanations for these disclosures believable.  The summary judgment standard will not permit the Court to make a determination about the credibility of explanations given for those actions.  *See Anderson*, 477 U.S. at 255 ("Credibility determinations . . . are jury functions, not those of a judge [when] ruling on a motion for summary judgment . . . .").  In the Court's judgment, these competing views of the facts are classic jury issues and do not entitle defendant to summary judgment.

Finally, defendant argues that plaintiff had access to the courts because she had access to attorneys who represented her during the period when she claims she could not access the court to file an action arising from the rape.  Defendant bases this argument principally on three cases: *Love v. Summit Cnty.*, 776 F.2d 908, 910 (10th Cir. 1985), *Simkins v. Saline Cnty. Sheriff's Dep't*, No. 99-3283-KHV, 2000 WL 1146124, at *5 (D. Kan. July 20, 2000), and *Smith v.*

*Harvey Cnty. Jail*, 889 F. Supp. 426, 431 (D. Kan. 1995). The Court has considered these cases and does not find them persuasive here. The facts differ in at least one material respect: none of the plaintiffs in defendant's cases was required to sign a confidentiality agreement restricting the prisoner's freedom to "discuss or divulge" the conduct that forms the basis of the claim.

**5.    Conclusion**

The summary judgment facts establish that a reasonable jury could find that plaintiff did not have the ability to access the court to file an action based on the rape. This means that such a jury could conclude that K.S.A. § 60-515(a) should toll the statute of limitations and thus nullify defendant's statute of limitations argument. Therefore, defendant is not entitled to judgment as a matter of law based on his statute of limitations defense.

**C.  Equitable Tolling**

"In a § 1983 action, state law governs issues regarding the statute of limitations and tolling[,]" so Kansas law will determine whether plaintiff is entitled to equitable tolling. *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010) (citing *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir.1995)). "[G]enerally a Kansas court can't extend the limitation period except as provided by statute." *McClain v. Roberts*, 304 P.3d 364, 2013 WL 3970215, at *3 (Kan. Ct. App. Aug. 2, 2013) (unpublished table opinion) (citing *Underhill v. Thompson*, 158 P.3d 987, 995 (Kan. Ct. App. 2007)). "At least as far as tolling authorized by statute is concerned, a prisoner is entitled to tolling only if he or she is denied access to the courts," as the Court already has discussed. *Id.* (citing *Bulmer*, 4 P.3d at 638; *Parker*, 109 F. App'x. at 319). The parties, however, discussed two possible equitable avenues for tolling the statute of limitations: equitable tolling and equitable estoppel. But because the Court has already determined that a reasonable jury could conclude that plaintiff lacked access to the courts to toll the statute of

limitations under Kansas statute, it need not reach the parties' equitable arguments.

Nevertheless, the Court notes in *McClain*, the Kansas Court of Appeals found that "equitable tolling doesn't apply to a prisoner's claim unless the prisoner didn't have access to courts." *Id.* at *1. This language suggests that Kansas courts would not consider tolling for prisoners outside of that allowed by K.S.A. § 60-515(a). But even if Kansas courts would consider an equitable tolling argument, plaintiff must demonstrate "some 'extraordinary circumstance stood in [the] way and prevented timely filing.'" *Id.* at *3 (quoting *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (further internal citation and quotation marks omitted)); *see also Gaines v. Lawrence*, No. 07-3212-SAC, 2010 WL 3829467, at *2 (D. Kan. Sept. 22, 2010) ("[e]quitable tolling is most likely to be applied if the claimant 'actively pursued his judicial remedies by filing a defective pleading during the statutory period,' or if his adversary induced or tricked him into filing after the deadline" (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))). And to establish equitable estoppel, plaintiff "must prove 'some representation or course of conduct which amounts to affirmative inducement sufficient to cause plaintiff to delay bringing the action.' The affirmative inducement must have been relied on in good faith by plaintiff." *Newman Mem'l Hosp. v. Walton Constr. Co., Inc.*, 149 P.3d 525, 542 (Kan. Ct. App. 2007) (quoting *Coffey v. Stephens*, 599 P.2d 310, 313 (Kan. Ct. App. 1979)).

Plaintiff neither has argued nor offered facts to show that she diligently pursued her rights (to the contrary, she waited almost exactly one year after her incarceration ended to file her Complaint); that any other extraordinary circumstances—other than the facts already considered as part of the statutory tolling analysis—prevented her from timely filing her claim; that she filed any pleadings, defective or not, during the statutory period; or that defendant Koerner actively deceived, induced, tricked her, or made any affirmative inducement that caused plaintiff to file

after the deadline.  For these reasons, if the Court were to rule on plaintiff's equitable tolling and equitable estoppel arguments, it would not view them favorably.  However, the Court does not need to decide these arguments because, as noted above, plaintiff has established sufficient facts to support her statutory tolling argument to survive summary judgment.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. 72) is DENIED.

IT IS SO ORDERED.

Dated this 18th day of November, 2014, at Topeka, Kansas.

s/ Daniel D. Crabtree_____
Daniel D. Crabtree
United States District Judge