## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TRACY KEITH,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 11-CV-2281-DDC-JPO** |
| **RICHARD D. KOERNER and ANANSTACIO GALLARDO,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's Motion for Default Judgment against defendant Ananstacio Gallardo under Fed. R. Civ. P. 55(b)(2) (Doc. 112).   The court held a hearing on this motion on February 10, 2016.  Plaintiff testified at the hearing and presented other evidence.  Plaintiff filed a damage request after the hearing.  Doc. 115.  Consistent with her request made at the hearing, plaintiff's damage request asks the court to award plaintiff $5,500,000 in actual damages and $16,500,000 in punitive damages against Mr. Gallardo.  Doc. 115.  Plaintiff also submitted a proposed order to the court granting her Motion for Default Judgment and awarding damages in the requested amounts.

Defendant Richard Koerner objects to plaintiff's proposed order.  He asserts that plaintiff's proposed order contains "collateral attacks" against him that are unnecessary and inappropriate in an order addressing a default judgment against his co-defendant, Mr. Gallardo, in his individual capacity.  Doc. 116 at 1.  Mr. Koerner has submitted a copy of plaintiff's proposed order striking out the portions that he finds objectionable.  Doc. 116-2.  The court has reviewed plaintiff's proposed order and Mr. Koerner's objections, and it adopts some, but not all, of the language from plaintiff's proposed order.  When appropriate, the court has incorporated

plaintiff's proposed language in this Memorandum and Order.  In other circumstances, the court omits plaintiff's references because they are unnecessary to determining the issues involving a default judgment against Mr. Gallardo in his personal capacity.

After carefully considering the evidence adduced at the February 10, 2016 hearing and the parties' submissions, the court grants plaintiff's Motion for Default Judgment against Mr. Gallardo and awards $750,000 for compensatory damages and $1,500,000 for punitive damages. The court explains how it reaches this decision below.

## I.    Procedural Background

Plaintiff Tracy Keith, a former inmate, filed this civil rights action under 42 U.S.C. § 1983, alleging violations of her rights under the Eighth Amendment.  Her Complaint alleges that Ananstacio Gallardo was employed by the Kansas Department of Corrections at the Topeka Correctional Facility ("TCF") and that Mr. Gallardo forced plaintiff to have sexual intercourse with him while she was incarcerated at TCF.  Plaintiff became pregnant as a result.  Her Complaint seeks monetary damages sufficient to compensate her for her injuries and punitive damages for reckless indifference to her federally protected rights.

Plaintiff's Complaint named several Kansas Department of Corrections employees as defendants, including the former TCF Warden Richard Koerner[1] and Mr. Gallardo. Plaintiff served Mr. Gallardo personally at an address in Topeka, Kansas, on September 7, 2011, as noted on the return of service filed with the court.  *See* Doc. 11.

On December 21, 2011, plaintiff filed an Application for Clerk's Entry of Default against Mr. Gallardo (Doc. 16), because he failed to file an Answer after plaintiff served him with the summons and Complaint.  The Clerk of the Court entered default against Mr. Gallardo on

---

[1]     The court granted Mr. Koerner's Motion for Summary Judgment on August 18, 2105.  Doc. 98. Plaintiff has appealed that ruling to the Tenth Circuit.  *See Keith v. Koerner*, Case No. 15-3219 (10th Cir.).  The appeal still is pending.

January 4, 2012 (Doc. 17).  To date, Mr. Gallardo has never answered this lawsuit.  Mr. Gallardo is, therefore, in default.

Also, Mr. Gallardo never has appeared personally or by a representative at any time in this case.  Thus, written notice of the application for default to Mr. Gallardo is not required.  *See* Fed. R. Civ. P. 55(b)(2) (requiring seven days' notice of the application for default judgment only when "the party against whom a default judgment is sought has appeared personally or by representative"); *see also Winfield Assocs., Inc. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir. 1970) (denying relief from a default judgment entered by a district court in Illinois without notice to defendant because the Illinois court concluded that defendant had not entered an appearance in the case); *Local Union No. 226 Int'l Bhd. Of Elec. Workers Open End Pension Tr. Fund v. Flowers Elec., Inc.*, No. Civ. A. 04-2237-CM, 2004 WL 2278562, at *1 (D. Kan. July 23, 2004) (holding that defendant's acceptance of service was not an appearance for purposes of Rule 55(b)(2), and thus concluding that no written notice of the motion for default judgment was required because defendant had not appeared in the action).

## II.     Legal Standard

Federal Rule of Civil Procedure 55 provides a two-step process for obtaining a default judgment.  First, Rule 55(a) allows the Clerk to enter default against a party who "has failed to plead or otherwise defend" a lawsuit.  Second, after the Clerk enters default, plaintiff may request the Clerk enter judgment in an amount that is "a sum certain or a sum that can be made certain by computation."  Fed. R. Civ. P. 55(b)(1).  But, when a plaintiff's claim is not for a sum certain or a sum made certain by calculation, plaintiff must apply to the court for a default judgment under Rule 55(b)(2).  When considering a motion for default judgment, the court may hold a hearing if "it needs to (A) conduct an accounting; (B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

"Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." *Mathiason v. Aquinas Home Health Care, Inc.*, __ F. Supp. 3d __, 2016 WL 2848921, at *2 (D. Kan. May 16, 2016) (citations and internal quotation marks omitted). The court accepts as true the well-pleaded factual allegations from plaintiff's Complaint but not allegations about the amount of damages. *Id.*

But, even after default, "'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). The district court exercises broad discretion when deciding whether to enter a default judgment. *Mathiason*, 2016 WL 2848921, at *2).

A default judgment also does not establish the amount of damages. *Id.* Instead, "[p]laintiff must establish that the amount requested is reasonable under the circumstances." *Id.* (citing *DeMarsh*, 2009 WL 3720180, at *2). A court may award damages "'only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *DeMarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (further citations and internal quotation marks omitted)).

## III.     Findings of Fact

The court finds that plaintiff is entitled to damages under 42 U.S.C. § 1983, based on these facts, taken from plaintiff's Complaint and attached exhibits, as well as testimony and

evidence presented at the February 10 hearing.  Plaintiff testified at the hearing.  Mr. Gallardo did not appear personally or by representative at the hearing.  He thus presented no witnesses or evidence on his behalf.  He also did not cross-examine plaintiff.  The court found plaintiff's testimony credible and incorporates her testimony into the factual findings below.

Plaintiff is now 42 years old.  She has been married once and currently resides with the man to whom she was married but once divorced.  They live together on a farm along with plaintiff's only child, a 19-year-old son.

After plaintiff was convicted of a drug charge, she was ordered to serve a five-year prison sentence.  She served part of this sentence at TCF from 2006 to 2010.  Plaintiff is 5'4" tall and was one of the smallest women inmates at TCF.  During her incarceration, plaintiff was placed in a plumbing class taught by Mr. Gallardo.  Another inmate told plaintiff that Mr. Gallardo "would put money on plaintiff's books" in exchange for sex.  Around this time, plaintiff's mother had just died, no one was providing her any money, and she was earning about $5 to $12 per month for her prison work.  Though she did not immediately agree to the inmate's suggestion, plaintiff eventually agreed to perform oral sex on Mr. Gallardo.

On October 2, 2007, plaintiff performed oral sex on Mr. Gallardo.  When that ended, Mr. Gallardo forcibly stood plaintiff up, turned her around, pulled down her clothing, and penetrated her vagina with his penis from behind.  Mr. Gallardo's actions were unwanted and unwelcome. Plaintiff tried to hang onto her clothes and to discourage him.  But Mr. Gallardo succeeded in raping plaintiff.  Afterwards, plaintiff received numerous suggestions about additional sexual contact with Mr. Gallardo, including three-way sex with him.  Plaintiff did not agree to these suggestions.

As a result of the rape, plaintiff became pregnant.  When plaintiff realized that she was pregnant, Mr. Gallardo suggested that he could sneak her away from the prison grounds to Wichita to have an abortion.  Plaintiff declined.  Mr. Gallardo also made threatening statements to plaintiff after he learned of the pregnancy.  He told plaintiff and others that he would kill anyone who told his wife what had happened with plaintiff.  He also tried to intimidate plaintiff, asking (if she complained about Mr. Gallardo raping her):  "Who's going to believe you? You're an inmate."  In addition, fellow inmates attacked plaintiff, kicking her repeatedly in the stomach and saying things like "take that" and "you got what you deserved."  Fellow inmates also taunted plaintiff regularly.  Plaintiff believed that her pregnancy had caused a problem for many female inmates who participated in illicit activities at TCF.

Plaintiff asked questions about what would happen with her pregnancy.  She learned that the State would take the child into custody.  She understands now that someone offered to adopt and raise the child, and she believes administrators at TCF knew of this offer but decided not to inform her of it.  Plaintiff testified that this information would have changed her decision-making and that she would have given birth to the child so that the person who expressed that interest could adopt and raise the baby.

As her pregnancy progressed, plaintiff considered the child's development within her body.  She even looked at some photographs showing fetal development during the course of a pregnancy.  After the rape and throughout the pregnancy, plaintiff was miserable and depressed. She testified that she was shunned and treated terribly in the facility, and that her entire term of incarceration was made more miserable by Mr. Gallardo's rape and the pregnancy that resulted.

On December 19, 2007, plaintiff aborted the pregnancy.  This occurred 78 days after Mr. Gallardo raped her.  Plaintiff testified that the entire 78 days was a horrific time for her, all

culminating in the abortion itself.  Plaintiff testified that she had aborted another pregnancy in her lifetime.  But, with the first abortion, plaintiff was anesthetized fully and was unaware of bodily sensations in that abortion.  Plaintiff testified that her experience was vastly different on December 19, 2007.  She remembers having instruments inserted into her body, the sound of the vacuum operating, the sensation of having a considerable amount of tissue sucked out of her body by the vacuum, and thinking about the parts of the child's body while the abortion was happening.  Plaintiff contends that this experience has changed her position on abortion.  She testified that she now opposes abortion strongly.  Plaintiff testified that she has remained haunted for the last nine years by this experience, and she expects that it will haunt her for the rest of her life.

Plaintiff's counsel informed this court that he represented another female TCF inmate who also was sexually abused by a male employee at the prison.  In that case, Judge Richard Rogers made the following findings of fact involving TCF inmate Rebecca Fleetwood's experience:

> She had qualified for the work release program and, one day in September 2008 around 6:00 a.m., she was waiting at a bus stop to ride to her place of employment.  She testified that defendant Van Dyke drove up and asked her to get into the car to save plaintiff a bus ticket.  Once she was in the car, defendant Van Dyke exposed his erect penis, fondled plaintiff's breasts and made sexual suggestions to her.  This was unwanted and unwelcome to plaintiff and she told defendant that she just wanted to get to work.
>
> According to plaintiff's testimony, at the end of her work day defendant Van Dyke drove to her place of employment and again told her to get into the vehicle.  Plaintiff complied and defendant drove to a nearby cemetery where he directed plaintiff to perform oral sex while he fondled her breasts.  Plaintiff testified that she did not want to do this, but felt she could not refuse because Van Dyke had the ability to report her as being "out of bounds" at the cemetery and thus, at least technically, on escape.  She noted in her testimony that she was familiar with and fearful of

> defendant's history, and that she knew defendant had relatives working at TCF who might back him up if she complained.
>
> Plaintiff testified that defendant continued to contact her after the incidents in September 2008 and even asked plaintiff for intercourse on the night that she was released from prison. Plaintiff named other inmates who were sexually assaulted by defendant. Defendant eventually pleaded guilty to criminal charges involving his actions against plaintiff and one other inmate.

Order, *Fleetwood v. VanDyke*, No. 10-2480-RDR (D. Kan. Aug. 14, 2012), ECF No. 54 at 2–3.

By defaulting in this case, Mr. Gallardo has not rebutted any of the allegations in plaintiffs' Complaint. One paragraph of plaintiff's Complaint alleges that Mr. Gallardo pleaded guilty to criminal charges in Shawnee County, Kansas, based on unlawful sexual relations and trafficking contraband in a correctional institution. Doc. 1 at ¶ 33.r. His plea agreement included a promise by the State of Kansas to refrain from filing additional charges against him "related to sexual conduct with [six] other inmate witnesses identified . . . during the course of [his] employment at the correctional institution." *Id.*

Plaintiff testified that inmate Kelley Lane had complained about Mr. Gallardo just weeks before the October 2, 2007 rape. Specifically, she complained about Mr. Gallardo discussing sexual things with female inmates, referring to a tattoo on a man's penis, and talking with female inmates about their sex lives. Plaintiff understands that Ms. Lane made this complaint to TCF administration but that no corrective or disciplinary action was taken.

## IV.  Conclusions of Law

### A.  Subject Matter Jurisdiction

"Before it may enter default judgment, the Court has an affirmative duty to determine whether it has subject matter jurisdiction." *Olivas v. Bentwood Place Apartments, LLC*, No. 09-4035-JAR, 2010 WL 2952393, at *6 (D. Kan. July 26, 2010) (citing *Ins. Corp. of Ireland v.*

*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  Federal courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treatises of the United States."  28 U.S.C. § 1331.  Here, plaintiff asserts a claim for alleged constitutional violations under 42 U.S.C. § 1983.  Plaintiff's lawsuit thus arises under federal law, and the court has subject matter jurisdiction under 28 U.S.C. § 1331.

## B.  Personal Jurisdiction

A court also must have personal jurisdiction over a defendant before entering a default judgment.  *Bixler*, 596 F.3d at 761.  Plaintiff's Complaint alleges that Mr. Gallardo resides in Kansas.  *See* Doc. 1 at 1 (listing Mr. Gallardo's address in the caption).  Plaintiff served Mr. Gallardo personally in Kansas on September 7, 2011.  *See* Doc. 11.  Service in this manner complies with the requirements of Rule 4(e)(2)(A).  That rule allows for service on an individual "by delivering a copy of the summons and of the complaint to the individual personally."  Fed. R. Civ. P. 4(e)(2)(A).  Service was proper here, and the court has personal jurisdiction over Mr. Gallardo.

## C.  Liability and Damages Under 42 U.S.C. § 1983

As stated above, the facts here establish a violation of 42 U.S.C. § 1983 for deprivation of constitutional rights.  A claim under § 1983 has two components:  (1) the constitutional deprivation "must be, objectively, sufficiently serious;" and (2) the prison official "must have a sufficiently culpable state of mind" or "one of deliberate indifference to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted).

First, the objective component is satisfied here.  Sexual assault by a prison employee violates the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008); *see also* (concluding "[t]here is no question that

sexual assault of the kind suffered by Ms. Tafoya meets [the] objective component of an Eighth

Amendment claim"); *see also Hovater v. Robinson,* 1 F.3d 1063, 1068 (10th Cir. 1993) ("[A]n

inmate has a constitutional right to be secure in her bodily integrity and free from attack by

prison guards." (citing *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir. 1986))).

Second, plaintiff has established that Mr. Gallardo was deliberately indifferent to a

serious risk of harm and plaintiff's safety. *See* Doc. 1 at ¶ 30 (alleging Mr. Gallardo's deliberate

indifference in plaintiff's Complaint); *see also Mathiason*, 2016 WL 2848921, at *2 (after

default, defendant lacks standing to challenge plaintiff's factual allegations and the court must

accept as true the well-pleaded factual allegations from plaintiff's Complaint). Plaintiff thus has

established that Mr. Gallardo violated 42 U.S.C. § 1983. Consequently, she is entitled to a

judgment on liability.

Next, the court must determine the damages that plaintiff may recover for Mr. Gallardo's

§ 1983 violation. "'[T]he basic purpose' of § 1983 damages is 'to compensate persons for

injuries that are caused by the deprivation of constitutional rights.'" *Memphis Cmty. Sch. Dist. v.*

*Stachura*, 477 U.S. 299, 307 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)). The

amount of damages for a § 1983 constitutional violation "is typically determined according to

principles derived from the common law of torts." *Id.* (citations omitted). "To that end,

compensatory damages may include not only out-of-pocket loss and other monetary harms, but

also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish

and suffering.'" *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)); *see also*

*Jolivet v. Deland*, 966 F.2d 573, 576 (10th Cir. 1992) (explaining compensatory damages may

include damages for mental and emotional distress). A § 1983 plaintiff must show proof of

actual injury to recover damages, and the damages awarded "'must be proportional to the actual injury incurred.'" *Jolivet*, 966 F.2d at 576.

A § 1983 plaintiff also may recover punitive damages. *Smith v. Wade*, 461 U.S. 30, 35 (1983). But punitive damages are available "'only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003) (quoting *Jolivet*, 966 F.2d at 577). Here, plaintiff meets this punitive damages standard. She has alleged that Mr. Gallardo was reckless and callously indifferent to plaintiff's federally protected rights. Doc. 1 at ¶ 44. Accepting these allegations as true, as the court must after default, plaintiff has established that Mr. Gallardo is liable for punitive damages.

"'[P]unitive damages serve a broader function [than compensatory damages]; they are aimed at deterrence and retribution.'" *Youren*, 343 F.3d at 1308–09 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). Thus, when determining the amount of a punitive damages award, "[t]he focus must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory awards.'" *Jolivet*, 966 F.2d at 577 (quoting *Smith*, 461 U.S. at 35). "The considerations for assessing punitive damages include 'an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent.'" *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989) (quoting *Miller v. City of Mission*, 705 F.2d 368, 377 (10th Cir. 1983)).

Also, the Supreme Court has instructed courts to "ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm*, 538 U.S. at 426. Thus, when reviewing punitive damages

awards, one factor that courts must consider is whether a disparity exists "between the actual or potential harm suffered by the plaintiff and the punitive damages award." *Id.* at 418 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

With these principles in mind, the court now turns to determine the appropriate amount of compensatory and punitive damages that plaintiff is entitled to recover from Mr. Gallardo.

### 1.  Compensatory Damages

Plaintiff has presented sufficient evidence to demonstrate she sustained injuries from Mr. Gallardo's conduct when he forced her to have sexual intercourse with him while she was incarcerated at TCF.  Plaintiff testified at the evidentiary hearing that she was one of the smaller females incarcerated at TCF, standing only 5'4" tall.  In contrast, Mr. Gallardo is 6'2" tall and weighs about 300 pounds.  Plaintiff described in detail how Mr. Gallardo raped her and how his conduct was unwanted and unwelcome.  She also described how she was depressed and fearful in the days following the rape.  Mr. Gallardo threatened to kill her if she told anyone about the rape, and his actions and response to her pregnancy made her even more emotional.

Plaintiff alleges that the worst time for her was the 78 days between the October 2, 2007 rape and the December 19, 2007 abortion.  She testified that she still is haunted today by the abortion and that she expects the entire experience will haunt her for the rest of her life.

Plaintiff seeks $5,500,000 in compensatory damages.  To support this request, she relies on Judge Rogers' damage award in the *Fleetwood* case described above.  In that case, TCF inmate Rebecca Fleetwood brought a § 1983 claim against a TCF correctional officer who exposed himself to Ms. Fleetwood, fondled her breasts, made sexual suggestions to her, and, eventually, forced her to perform oral sex on him while he fondled her breasts.  Order, *Fleetwood v. VanDyke*, No. 10-2480-RDR (D. Kan. Aug. 14, 2012), ECF No. 54 at 2.  Ms.

Fleetwood testified that she suffered emotional distress because of the officer's misconduct including depression and fear.  *Id.* at 3.  Judge Rogers entered default judgment against the TCF correctional officer and awarded Ms. Fleetwood $500,000 in actual damages and $250,000 in punitive damages.  *Id.* at 4.

Plaintiff asks the court to multiply Judge Rogers' compensatory damage award of $500,000 in a case involving forced oral sex that occurred on a single day by 11—the number of weeks between plaintiff's rape and the abortion when she suffered severe emotional distress. This results in a proposed $5,500,000 compensatory damage award.  Though the court agrees with plaintiff that the facts here support a compensatory damage award greater than the one awarded in *Fleetwood*, the court concludes that plaintiff's proposed amount is too high.

Instead, the court examines other cases with facts more like those presented here.  For example, in *Meyer v. Nava*, a female plaintiff brought at § 1983 claim against a prison employee who raped, sodomized, and sexually battered her when she was incarcerated in the Lyon County Jail in Emporia, Kansas.  No. 04-4099-RDR, 2007 WL 3046583, at *1 (D. Kan. Oct. 17, 2007). About six months after the assault, plaintiff broke up with her boyfriend, who also was the father of her child.  *Id.* at *2.  The assault was part of the reason for the breakup, but other factors caused the relationship to end as well.  *Id.*  Because of the assault, plaintiff was depressed.  *Id.* She had trouble sleeping and recurrent nightmares.  *Id.*  After conducting a hearing on damages and reviewing all the evidence presented, Judge Rogers awarded plaintiff $750,000 for emotional and mental distress damages.  *Id.* at *3.  He also awarded $1,000,000 in punitive damages.  *Id.*

Other courts have awarded similar damages in cases involving rape by a law enforcement or correctional officer.  *E.g.*, *Mathie v. Fries*, 121 F.3d 808, 810, 814, 817 (2d Cir. 1997) (affirming district court's award of $250,000 in compensatory damages for emotional distress

and reducing the punitive damages award to $200,000 against a prison official who, in a "horrific

episode," handcuffed a prisoner to vertical pipes and anally raped him); *Doe v. Neal*, No. SA-14-

CA-102-XR, 2015 WL 3688259, at *4 (W.D. Tex. June 12, 2015) (awarding $750,000 in

compensatory damages and $1,000,000 punitive damages against a police officer who pulled

plaintiff over in his patrol car, placed her in handcuffs, and raped her); *Cash v. Cty. of Erie*, No.

04-CV-0182-JTC(JJM), 2009 WL 3199558, at *3 (W.D.N.Y. Sept. 30, 2009) (awarding

$500,000 for emotional distress damages and $150,000 in punitive damages against a prison

guard who assaulted and raped plaintiff during her incarceration as a pretrial detainee); *Hall v.

Terrell*, 648 F. Supp. 2d 1229, 1231–32 (D. Colo. 2009) (awarding $350,000 for emotional

distress, mental anguish, and suffering damages and $1,000,000 in punitive damages to a

plaintiff who was the "victim of both ongoing sexual abuse and a brutal rape" by a prison guard).

But these cases also differ from the facts presented here because none involved a

pregnancy from the rape.[2]  The court has found two cases where that happened.  They both

involve jury awards for damages.  In one, a jury found a correctional officer liable under § 1983

for raping a female inmate after threatening her with disciplinary action and physical violence.

*Berry v. Oswalt*, 143 F.3d 1127, 1129 (8th Cir. 1998).  When the inmate told the officer that she

thought she was pregnant, he tried to make her abort the pregnancy by forcing her to ingest

quinine and turpentine.[3]  *Id.*  The officer also instructed her to hide the pregnancy and blame

another officer for impregnating her.  *Id.*  After a trial, the jury awarded the inmate $40,000 in

compensatory damages and $15,000 in punitive damages.  *Id.*  In another case, a jury awarded a

---

[2]      No pregnancy resulted from the rape in *Neal*, but plaintiff already was pregnant when the police
officer raped her.  *Neal*, 2015 WL 3688259, at *2 (stating that plaintiff "had just become aware the prior
week that she was pregnant").

[3]      The case does not state whether the inmate actually was pregnant or if the prison official was
successful in his attempts to force the inmate to abort the pregnancy.

14

female inmate $7,500 in compensatory damages and $50,000 in punitive damages against a correctional officer who forced plaintiff to have sexual intercourse with him causing her to become pregnant and give birth to a child. *Daniels v. Hawkins*, No. Civ. A. 96-009 JJF, 2004 WL 1375298, at *1 (D. Del. June 15, 2004).

While these cases provide some guidance when formulating the damage award, the court finds that the amounts awarded by the juries in those cases are insufficient to compensate plaintiff for the emotional damage she sustained from Mr. Gallardo's outrageous sexual conduct and the pregnancy that resulted. After considering plaintiff's testimony and the evidence of her damages, the court awards plaintiff $750,000 in compensatory damages against Mr. Gallardo.

### 2. Punitive Damages

Following the legal standards governing punitive damages recited above and considering punitive damage awards in other cases involving rapes by prison officials, the court concludes that a $1,500,000 punitive award serves the aims of punishment and deterrence. *See Jolivet,* 966 F.2d at 577 (instructing courts to focus on deterrence and punishment when formulating punitive damage awards).

Mr. Gallardo committed a violent and disgusting act against plaintiff. The facts establish that he acted with an evil intent and callous indifference to plaintiff's federally protected rights. Because of Mr. Gallardo's conduct, plaintiff has endured significant emotional distress, including fear and depression, that stems not only from the rape but also from the pregnancy that resulted. The court finds that the punitive damage award will punish Mr. Gallardo for his horrific conduct.[4]

---

[4]      Because Mr. Gallardo has never appeared, the court is unable to assess his financial condition to determine whether the amount awarded serves sufficient punishment or deterrence for Mr. Gallardo. But his failure to appear does not preclude the court from awarding punitive damages. Our court has recognized that a defendant's failure to appear prevents a plaintiff from discovering evidence about

The punitive damages award also serves to deter other prison officials from committing sexually violent acts against inmates.  *See*, *e.g.*, *Jones v. Courtney*, No. 04-3255-JWL-DJW, 2007 WL 2893587, at *9 (D. Kan. Sept. 28, 2007) (concluding that a punitive damage award "would signal to prison authorities that the brutal treatment of prisoners will not be tolerated").  Here, plaintiff presented evidence of other sexual misconduct at TCF committed by Mr. Gallardo.  Indeed, Mr. Gallardo's plea agreement identified six other female inmates with whom he allegedly engaged in sexual conduct.  The court imposes a punitive damages award here that is twice the amount of the compensatory damages award to deter others from engaging in similar abusive conduct against inmates.

Finally, the court finds that the punitive damage award is proportional to the compensatory damages awarded.  The court thus awards $1,500,000 in punitive damages concluding that it is an appropriate amount to punish Mr. Gallardo and to deter others from engaging in similar conduct.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Default Judgment against defendant Ananstacio Gallardo under Fed. R. Civ. P. 55(b)(2) (Doc. 112) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** judgment be entered in favor of plaintiff against defendant Ananstacio Gallardo in the amount of $750,000 for actual damages and $1,500,000 for punitive damages.

---

defendant's financial condition, but that should not bar plaintiff from recovering punitive damages.  *See Beck v. Atl. Contracting Co., Inc.*, No. 93-2480-JWL, 1994 WL 608598, at *1 (D. Kan. Oct. 14, 1994).

**IT IS SO ORDERED.**

**Dated this 30th day of August, 2016, at Topeka, Kansas.**

                                      **s/ Daniel D. Crabtree**
                                      **Daniel D. Crabtree**
                                      **United States District Judge**